Filed 7/24/24  H.D. v. County of Los Angeles CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| H.D., a Minor, etc., | B326811 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 20STCV18101) |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

Perona, Langer, Beck, Serbin & Harrison, Alvin Chang; Steele Cooper Law and Alexandra Steele Cooper for Plaintiff and Appellant.

Collins + Collins, Thomas A. Guterres and Adam A. Ainslie for Defendant and Respondent.

In May 2019, Larry Doran and Eric Wyler were involved in a traffic collision that occurred as Wyler was exiting a paved area on the side of the road just beyond a blind curve on Soledad Canyon Road.  Doran, who was riding a motorcycle, died from his injuries.  Doran's daughter, appellant H.D., filed this action against respondent County of Los Angeles (County) and the City of Santa Clarita (City), under Government Code section 835.[1]  H.D. claims, in relevant part, that the County is liable for Doran's death because it had notice that motorists exiting the paved area could not see vehicles traveling southbound on the blind curve, and it failed to take protective or remedial measures.

The County moved for summary judgment.  It argued, among other things, that it did not have actual or constructive notice of the dangerous condition posed by the driveway.  The trial court agreed and granted summary judgment in the County's favor.

We conclude that no triable issues of material fact exist as to the County's actual or constructive notice and affirm the trial court's ruling.

## FACTUAL AND PROCEDURAL BACKGROUND
### *Soledad Canyon Road and the Driveway*

Soledad Canyon Road is a public highway in Los Angeles County.  Less than half a mile south of Agua Dulce Canyon Road in the City, Soledad Canyon Road curves to the right for southbound traffic.  Six chevron signs warn drivers of the upcoming curve.

An area of paved asphalt (the driveway) is located to the right (west) of Soledad Canyon Road's southbound lane after the

---

[1]    All further undesignated statutory references are to the Government Code.

2

curve. The driveway is about 50 feet wide and 20 to 30 feet deep. The property beyond the driveway is barred by a locked gate. A sign on the gate states, "City of Santa Clarita Plans Planning and Open Space" and instructs those seeking access to the property during business hours to call a City phone number. The City has keys to the gate. An access road behind the gate leads to City-owned property. From 2012 to the date of the accident in 2019, there were no active operations or facilities on the property. Members of the public can only access the property by first contacting the City to open the gate.

### The May 2019 Accident

In May 2019, Doran was traveling on a motorcycle southbound on Soledad Canyon Road at around 11:45 a.m. Moments before, Wyler had pulled his SUV into the driveway from the southbound lane because he was experiencing car trouble. Although he had driven on this stretch of Soledad Canyon Road many times, he had never before noticed the driveway. Wyler pulled out of the driveway as Doran came around the curve.[2] Doran's motorcycle collided with Wyler's SUV. Doran died from injuries he sustained in the accident.

### Complaint

In May 2020, H.D. filed a complaint through her guardian ad litem alleging a single cause of action "for negligence and

---

[2] Wyler testified at a deposition that he did not use the driveway to make a U-turn, but instead intended to turn right and continue southbound on Soledad Canyon Road at the time of the collision. Charles Delgado, a California Highway Patrol (CHP) officer, testified that, based on his investigation of the accident site, he believed Wyler was making a left turn out of the driveway and into the northbound lane to return home at the time of the collision.

3

statutory liability" against the County and the City.  H.D. sought to hold the County and the City directly liable under section 835 for the "dangerous condition" caused by "the unmarked driveway adjacent to the blind right-hand curve on Soledad Canyon Road . . . ."[3]  The complaint alleged the County and the City had actual and constructive notice of the dangerous condition.  As relevant here, the complaint identifies the following deficiencies in the design, construction, and maintenance of the roadway giving rise to the dangerous condition: "The unmarked driveway adjacent to the blind right-hand curve on Soledad Canyon Road from where the vehicle colliding with Plaintiff's father exited is not readily apparent to approaching southbound motorists;" and "The stopping sight distance for southbound motorists navigating the blind right-hand curve on Soledad Canyon Road at the subject location is unreasonably insufficient as it does not provide adequate reaction time and braking distance when another motorist is entering or exiting the unmarked driveway."[4]

---

[3]     The County and the City filed separate cross-complaints against Wyler.  This appeal concerns only the trial court's grant of summary judgment of H.D.'s cause of action against the County.  The remainder of the case was stayed pending appeal.

[4]     It is undisputed that part of the alleged dangerous condition was that "[t]he embankment/hillside, along with the dense brush and bushes on the embankment/hillside," interfered with a driver's sight distance when exiting the driveway.  The complaint alleges a total of 10 purported inadequacies in the design, construction, and maintenance of Soledad Canyon Road— identifying each as a "dangerous condition"—some of which are subsumed by the two noted above.  In her opposition to summary judgment, H.D. did not argue any triable issues exist as to the

4

### *Summary Judgment*

In July 2022, the County moved for summary judgment, arguing, in part, that no triable issues existed as to actual or constructive notice. The County offered declarations from County employees who found no complaints, work orders, citizen requests, internal reports, or other records regarding the driveway or any prior accidents involving the driveway.[5] The County also argued that the dangerous condition was not obvious, relying on the lack of complaints or prior accidents. The County also relied on testimony that it was not responsible for inspecting the driveway; the driveway "was virtually never used" at the time of the accident; and the dangerous condition of the driveway was not apparent to anyone on Soledad Canyon Road.

---

other distinct conditions alleged in the complaint. The trial court's ruling therefore focused on the above two allegations in its analysis of whether there was a triable issue that the driveway presented a dangerous condition. On appeal, H.D. does not contend this was erroneous or that she established there were triable issues of fact with respect to the other distinctly alleged dangerous conditions. We therefore do not consider the other enumerated dangerous conditions alleged in the complaint.

[5] The trial court excluded three exhibits attached to H.D.'s request for judicial notice, select statements in County employee declarations, and certain conclusions in the declaration of Dale Dunlap, H.D.'s expert witness. Consistent with the principles of appellate review of a trial court order granting summary judgment, we do not consider excluded evidence where no party has challenged the trial court's rulings sustaining the objections. (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014.) We address below H.D.'s challenge to the trial court's exclusion of Dunlap's statements.

In her opposition, H.D. argued that the County's monthly inspections, its records regarding a 2013 collision, and a consent decree between the County and a company seeking to mine the land adjacent to the driveway, raised triable issues of actual notice. H.D. also contended that triable issues existed regarding constructive notice because the driveway, by virtue of its size and location, was "open and obvious," and witness testimony showed the driveway had "obvious line of sight deficiencies."

After briefing and a hearing, the trial court granted summary judgment. The trial court found H.D. raised triable issues about whether the County is liable for a dangerous condition on a property adjacent to its own and whether the sight distance at the driveway's location constituted a dangerous condition. But the trial court concluded H.D. failed to show triable issues as to actual notice and "on the preliminary issue of obviousness of the dangerous condition" for constructive notice, and granted summary judgment in the County's favor.

H.D. timely appealed.

## DISCUSSION

### I. Standard of Review

A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact based on specific facts. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) A triable issue exists if "the evidence would allow a reasonable trier

6

of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.) To determine whether triable issues exist, courts " 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' [Citation.]" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286 (*Hartford*).) If the evidence does not raise a triable issue of material fact, the defendant is entitled to summary judgment. (*Ibid.*)

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.]' " (*Hartford*, *supra*, 59 Cal.4th at p. 286.)

## II. The Trial Court Properly Granted Summary Judgment

### A. Section 835

Section 835 is part of the Government Claims Act. (§ 810 et seq.) The act " 'confine[s] potential governmental liability to rigidly delineated circumstances . . . .' " (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.) " '[A] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.' (§ 815, subd. (a).)" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; accord, *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897 ["there is no common law tort liability for public entities"].)

7

Section 835 " 'sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property.' [Citation.]" (*Stack v. City of Lemoore* (2023) 91 Cal.App.5th 102, 108.)  To recover under section 835, a plaintiff must prove a dangerous condition exists on the property; the dangerous condition proximately caused the injury; the condition created a reasonably foreseeable risk of the type of injury that was actually incurred; and the public entity either created the dangerous condition or had actual or constructive notice of the dangerous condition and sufficient time to remedy it.  (§ 835, subds. (a), (b).)

"The liability of the municipality is for negligence, which is not to be presumed.  Under the statutory liability there can be no negligence in failing to repair or give warning of a condition unless it is one which is known, or in the exercise of ordinary care would be known to impose an unreasonable risk of injury. . . .  The liability statute cannot be given application that would render the municipality an insurer against accidents.  Knowledge of the dangerous nature of the condition must be shown." (*Ellis v. City of Los Angeles* (1959) 167 Cal.App.2d 180, 187 [addressing liability under section 835's predecessor statute, former section 53051].)

### B.    The trial court properly found no triable issues as to actual notice

"A public entity had actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." (§ 835.2, subd. (a).)  In other words, actual notice requires that the public entity knew or should have known that a condition "create[s] a substantial hazard to members of the public engaged

8

in the customary, reasonably foreseeable use of" a property. (*Drummond v. City of Redondo Beach* (1967) 255 Cal.App.2d 715, 719 (*Drummond*).) "To establish actual notice, '[t]here must be some evidence that the employees had knowledge of the particular dangerous condition in question'; 'it is not enough to show that the [public entity's] employees had a general knowledge' that the condition can sometimes occur." (*Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 519 (*Martinez*).)

### 1. The County met its initial burden

The County made a prima facie showing that it had no actual knowledge that the sight distance for drivers exiting the driveway was deficient.[6]

The County's evidence established it did not own the land where the driveway is located at the time of the driveway's construction or after, and it was not involved in the driveway's construction. Various mining companies leased the property from a private individual beginning in the 1960's, acquired an interest in the property in the 1970's, and sold the property to the City in 2004, after which the driveway was installed. The City's project development coordinator was responsible for managing the land after it was incorporated into a City district in 2007. The City owned the parcel of undeveloped land beyond the gate as passive property to prevent additional mining projects. The City has the key to the locked gate and would send someone out

---

[6] In a declaration supporting the County's motion for summary judgment, a civil and traffic engineer retained as the County's expert witness defined "sight distance" as "the length of the roadway ahead that is visible to the driver. The available sight distance on a roadway should be sufficiently long to enable a vehicle traveling at expected speeds to stop before reaching a stationary object in its path."

9

to provide access to those who "had a legitimate reason" to enter the property.

The County further offered evidence demonstrating County inspectors did not know, and had no reason to know, about the driveway's dangerous condition. County employees attested that the signing and striping plan, traffic plans, and roadway design plans for Soledad Canyon Road did not refer to the driveway, depict the driveway, or otherwise reflect that it existed. The County's monthly visual inspection of Soledad Canyon Road was limited to the "traveled way" in front of the access location, which "is from white line to white line." Robert Luna, the County's road maintenance supervisor who had conducted monthly visual inspections of Soledad Canyon Road since 2018, testified that he had never inspected the driveway or access road and was not aware of anyone in his division who had done so or would have reason to do so. Despite having traveled past the driveway more than 100 times, he had never seen any vehicle pull into or out of the driveway. Luna testified that he had never communicated with City officials about the driveway or the parcel of land beyond it.

Previous accidents did not give the County actual notice of the dangerous condition. The County proffered evidence that since 2010, the only accident involving a vehicle entering or exiting the driveway was the accident between Doran and Wyler in 2019. Further, the collision rate along Soledad Canyon Road near the accident site was within the expected rate and therefore did not alert the County to any elevated risk associated with traveling that stretch of Soledad Canyon Road.

The County presented sufficient evidence to meet its burden to show it had no actual notice of the dangerous condition

10

created by the driveway.  (§ 835.2, subd. (a); see *Aguilar*, *supra*, 25 Cal.4th at p. 851.)

### 2. H.D. failed to raise a triable issue as to whether the County had actual notice of the dangerous condition

H.D. contends other evidence "create[s] triable issues regarding the County's 'actual knowledge of the existence' of the Driveway—the first prong to establish actual notice under Government Code section 835.2."  However, a public entity's "actual knowledge of the existence of the condition" is only one element of actual notice.  (§ 835.2, subd. (a).)  Evidence must also show the public entity "knew or should have known of its *dangerous character*."  (*Ibid.*, italics added.)

Here, H.D.'s theory, as her expert, Dunlap, explained, is that the driveway is a dangerous condition because the sight distances for motorists traveling on Soledad Canyon Road and for motorists in the driveway are both insufficient.  Dunlap explained that determining whether the driveway is a dangerous condition requires considering the "entire factual scenario," which includes both (1) the insufficient stopping sight distance for motorists traveling southbound around the curve on Soledad Canyon Road to avoid a collision with vehicles exiting the driveway, and (2) the limited intersection sight distance of the motorist on the driveway who cannot see a vehicle on Soledad Canyon Road approaching in the southbound lane, and therefore cannot avoid making a potentially unsafe entrance onto Soledad Canyon Road.[7]

---

[7]  According to the County's expert, "[s]topping sight distance is derived from the sum of two distances: (1) the distance

11

As explained in more detail below, H.D. failed to proffer evidence from which a reasonable trier of fact could infer the County knew or should have known of the driveway's dangerous character, particularly as it relates to the limited sight distance of a motorist on the driveway.  (*Drummond, supra,* 255 Cal.App.2d at p. 719; cf. *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 778–780 [town had actual notice of a dangerous condition where evidence showed a prior complaint and the town knew "the configurations, distances, and other physical characteristics" of a road and adjacent graveled area, which induced people to use the graveled area in a dangerous way].)

### a.     The 2004 consent decree between the County and CEMEX

H.D. cites a 2004 consent decree resolving a lawsuit between the County and CEMEX, Inc. (CEMEX), a private developer, regarding the mining of federal mineral resources on the property accessible from the driveway and access road.  The decree included certain "Project Conditions" stipulated by the County and CEMEX, which included the installation of a new

---

traversed by the vehicle from the instant the driver sights an object necessitating a stop until the instant the brakes are applied, and (2) the distance needed to stop the vehicle from the instant brake application begins."  Standards set by the American Association of State Highway and Transportation Officials, attached as an exhibit to Dunlap's declaration, explain that "intersection sight distance" or "corner sight distance" is "based on the same principles as stopping sight distance, but incorporate[s] modified assumptions based on observed driver behavior at intersections," such as accounting for vehicles stopped at intersections and the traffic-control devices that could obstruct a drivers view at an intersection.

entrance to the mining project on Soledad Canyon Road a few hundred feet west of the accident location. Among other things, this condition required CEMEX to "[p]rovide adequate sight distance and westbound merging lane" for entrance into the mining facility. The project ultimately did not move forward.

This evidence does not support H.D.'s contention that the County had actual knowledge of the dangerous condition presented by the driveway. The evidence concerns the design and implementation of a new entrance for an unrealized mining project, not the driveway. The County employee who reviewed the project conditions testified that he did not recall any reference to the existing driveway or access road. That the County required CEMEX to ensure adequate sight distance at a prospective access point in a different location does not create a reasonable inference that the County knew or should have known that sight distance was deficient from the existing driveway.

### b. The County's monthly inspections

H.D. contends that the testimony of County road maintenance supervisor Luna raises a triable issue regarding actual notice. She argues Luna's testimony that he was familiar with the driveway, knew that it was owned by the City, and estimated that he has driven by "more than 100 times," raised a triable issue as to whether the County had "acquired actual knowledge of the existence of the driveway" before the 2019 accident. H.D. also contends that, given that the driveway was unpermitted, the County Permits Section should have been aware of the driveway as construction or a project that required a permit.

As explained above, evidence showing the County knew or should have known the driveway existed is insufficient to

13

establish a triable issue that the County had actual notice of the driveway's deficient sight distance. The evidence H.D. cites does not create a triable issue about whether any County employee knew vehicles exiting the driveway had an obstructed view of Soledad Canyon Road. To the contrary, Luna testified he had never visually or physically inspected the driveway because it was not part of the area he was responsible for inspecting. He also testified he had never used the driveway and had not observed any other vehicle pulling into or out of the driveway. Further, Luna testified that there was no reason for any County official to have inspected an "existing access location" because it was not part of the "traveled way" of the County road.

### c. The 2013 accident near the driveway

H.D. contends a previous accident on Soledad Canyon Road near the driveway provided actual notice to the County about the dangerous condition. This argument is also unavailing.

In 2013, a driver lost control of a vehicle on Soledad Canyon Road while coming around the southbound curve at the subject location and fell down the embankment. After the accident, the County conducted a field investigation of the location and determined the accident was caused by the driver's excessive speed. It further determined that "there is sufficient sight distance for motorists in each direction along Soledad Canyon Road, when using normal caution" and that the location did not meet the criteria for the installation of guardrails.

Nothing in the record indicates that the driveway was a cause or factor in the 2013 accident. The accident did not involve the driveway. That the accident occurred near the driveway, caused only by excessive speed and not by any dangerous condition related to the driveway, is not sufficient to raise a

14

triable issue regarding actual notice. (See *Genrich v. State of California* (1988) 202 Cal.App.3d 221, 228–229 [finding that a high number of accidents was insufficient to put the State on notice of a hazardous condition created at a pedestrian crosswalk when only five accidents involved pedestrians and none involved crosswalks].)

Nonetheless, H.D. contends the evidence related to this accident creates a reasonable inference that the County had actual notice of the dangerous condition. She points to a photograph attached to the County's accident report from 2015 capturing a portion of the driveway's apron. At most, a trier of fact could reasonably infer from the photograph that the County was aware of the driveway's location. Again, this is not sufficient to raise a triable issue as to whether the County knew or should have known that the sight distance when using the driveway was deficient, thus creating a hazard to drivers on Soledad Canyon Road. (§ 835.2, subd. (a).)

H.D. also argues the County's accident inspection protocols would have necessarily required County officials to inspect the portion of Soledad Canyon Road connected to the paved driveway. This contention finds no support in the record. Employees from the County's Traffic Investigations section, which conducted the investigation into the 2013 accident, attested that County staff had no reason to note the driveway or its latent sight distance issues because the driveway did not cause the 2013 accident and was therefore not the focus of the investigation or the subsequent assessment of safety measures at the location.

15

### 3. The trial court did not abuse its discretion by excluding the expert's conclusions

H.D. also challenges the trial court's ruling sustaining the County's objections to three statements in the declaration of her expert, Dunlap, which she asserts created a triable issue of fact as to actual notice. We find no abuse of discretion.

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid. Code, § 720, subd. (a).) When testifying, an expert witness's opinions are limited to those based on his qualifications or on materials "of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates . . . ." (Evid. Code, § 801, subd. (b).) Additionally, Evidence Code section 802 allows a court to determine whether any material on which an expert relies "actually supports the expert's reasoning." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771 (*Sargon*).)

On summary judgment, " 'the rule [is] that . . . we liberally construe the declarations for the plaintiff's experts.' [Citations.]" (*Fernandez v. Alexander* (2019) 31 Cal.App.5th 770, 782 (*Fernandez*).) An expert's declaration in opposition to summary judgment need not include explanations that are as detailed or extensive as those required at trial or in support of summary judgment. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189.) However, these principles do not eliminate the need for an expert opinion to meet general admissibility requirements, including proper foundation.

16

(*Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 391; *Fernandez*, at p. 782.)

We review the trial court's decision to exclude expert testimony for abuse of discretion, keeping in mind that the trial court's "broad discretion to exclude or admit expert testimony" warrants reversal only if the ruling is arbitrary or irrational. (*Bader v. Johnson & Johnson* (2022) 86 Cal.App.5th 1094, 1104, 1105.)

H.D. challenges the trial court's exclusion of the following statements: (1) "[T]here is evidence the County had multiple opportunities to observe and evaluate the safety hazard the intersection presented to the public"; (2) "Although that [2013] accident did not directly involve the intersection, it would be expected that County personnel inspecting the roadway and its operation for a fatal accident at that location would recognize the dangerous condition created by an intersection located at a blind curve"; and (3) "Routine inspections of the type the County has admitted to conducting along Soledad Canyon Road should have resulted in County personnel recognizing this intersection with sufficient time to mitigate the hazard prior to the subject collision."

The trial court excluded these conclusions on the grounds that they lacked foundation, misstated evidence, were speculative, and constituted improper expert opinion. H.D. argues generally that Dunlap's statements are admissible expert opinions based on his experience as a "traffic engineering expert." H.D. also contends that Dunlap reasonably relied on the evidence to form his opinions about notice "because [the evidence] speak[s] to issues of traffic safety analysis and the identification of hazards," which are within Dunlap's expertise.

17

We find no abuse of discretion. Liberally construed, Dunlap's experience, as stated in his declaration and curriculum vitae, does not reflect that he is qualified to testify about a public entity's notice of a dangerous condition. Dunlap is an engineer with private sector experience in highway design and construction. There is no evidence that Dunlap has any experience with or specialized knowledge of County inspection protocols. Dunlap's declaration and curriculum vitae did not indicate he had worked for the County or otherwise established that his knowledge, skill, experience, training, or education qualifies him to opine about what the County is expected to discover in the course of its routine or accident inspection duties. "[A]n expert's conclusory opinion that something did occur, when unaccompanied by a reasoned explanation illuminating how the expert employed his or her superior knowledge and training to connect the facts with the ultimate conclusion, does not assist the [factfinder]." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117.)

Further, Dunlap's statements were not supported by the evidence on which he relied—evidence of the 2018 signing and striping plans for the CEMEX mining project, the County's investigation of the 2013 accident at the subject location, and the County's routine inspections of Soledad Canyon Road. Dunlap opined based on this evidence that the County had "multiple opportunities" to learn about the dangerous condition, that the County "would be expected" to recognize the dangerous condition, or that the County was, in fact, aware of it. However, H.D. did not dispute that the CEMEX plans concerned a new access point, not the driveway; the 2013 accident did not involve the driveway; and the County's inspections were limited to the "traveled way"

18

and did not encompass the driveway. Dunlap did not reconcile these undisputed facts with his conclusion that this evidence demonstrated the County should have known about the driveway's dangerous character. (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 130 [although expert declarations in opposition to summary judgment are liberally construed, opinions must still be based on facts in the record].) "Where the matter relied upon does not provide a reasonable basis for the opinion . . . or the opinion is based on a leap of logic or conjecture, the opinion may be excluded." (*Apple Inc. v. Superior Court* (2018) 19 Cal.App.5th 1101, 1121; *Sargon, supra*, 55 Cal.4th at p. 771 [in evaluating the admissibility of an expert opinion, " '[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered' "].) The trial court's decision to exclude Dunlap's statements was therefore based on applicable legal principles and was not an abuse of discretion.

H.D. failed to raise a triable issue regarding the County's actual notice of the deficient sight distance from the driveway. The trial court's finding in favor of the County on this issue was therefore proper.

**C. The trial court properly found no triable issues as to constructive notice**

H.D. also contends triable issues exist as to whether the County had constructive notice of the driveway's deficient sight distance. We disagree.

A public entity has constructive notice of a dangerous condition "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."

19

(§ 835.2, subd. (b).) The obviousness of a defect is a "threshold element[ ] to establish a claim of constructive notice." (*Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 317 (*Heskel*).)

A defect's obviousness is necessary for constructive notice because " '[t]he information or knowledge of facts possessed by a party must be such that he is conclusively presumed to have notice of the main fact to which the constructive notice is invoked.' " (*Nicholson v. City of Los Angeles* (1936) 5 Cal.2d 361, 364 (*Nicholson*).) Whether a defect is sufficiently obvious to impart this conclusive presumption "depends upon ' "all [of] the existing circumstances." ' [Citation.]" (*Martinez*, *supra*, 71 Cal.App.5th at pp. 521, 525 [there is no "one-size-fits-all definition of obviousness"].) These circumstances include (1) " 'the location, extent, and character of the use' " of the property, "which looks to both its intended use for travel as well as the actual 'frequency of travel in the area' "; and (2) " 'the magnitude of the problem of inspection,' " meaning " 'the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise' [citations]." (*Id.* at p. 521.)

When determining whether constructive notice exists, courts consider whether the facts known to the public entity's employees make a dangerous condition noticeable or foreseeable to the public entity. For example, in *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830 (*Carson*), a police officer's testimony about the heavy amount of traffic in the accident area created an inference that "police officers regularly patrolled the intersection," supporting a finding that the city had constructive notice of an unpermitted sign erected on the city's land that obstructed the visibility of drivers on those streets. (*Id.* at

20

pp. 844, 837.)  In contrast, in *Heskel*, *supra*, 227 Cal.App.4th 313, declarations from city workers attesting they had not observed the post the plaintiff tripped over, and had not received complaints or reports about it, shifted the burden to the plaintiff to raise a triable issue, which the plaintiff failed to do.  (*Id.* at pp. 318–319.)  In other contexts, courts have relied on evidence reflecting employees' knowledge about a dangerous condition in evaluating whether the public entity had constructive notice. (See *Straughter v. State of California* (1976) 89 Cal.App.3d 102, 109–111 [the state had constructive notice of icy highway through a state highway foreman's awareness of the fog and temperature conditions within hours before an accident]; *Briggs v. State of California* (1971) 14 Cal.App.3d 489, 492, 496–498 [state had constructive notice of mudslide where state highway crew cleaned up mud on a public highway from the previous slide and erected signs warning the traveling public]; cf. *Cheyney v. City of Los Angeles* (1953) 119 Cal.App.2d 75, 77 [no constructive notice under former public liability statute where city's beach supervisor did not know that the sand level at the base of a stairway, which could vary up to five feet in 24 hours, was below the bottom step].)

### 1.    The County met its initial burden

The County met its initial burden to show no triable issues exist as to the obviousness of the driveway's insufficient sight distance.  There was no evidence that any County employee knew the driveway was used in any manner.  The County did not construct, design, inspect, or maintain the driveway.  No County employees had seen motorists use the driveway.  Nor does the evidence indicate that the use of that portion of the side of the road as a driveway or turnaround by passing motorists was

foreseeable. The City owns the adjoining land as "passive property," and a locked gate bars the road. Further, the City, not the County, controlled access to the property from the driveway's gate. The City employee overseeing the property recalled the property was last used for filming in 2012. No accidents involving the driveway occurred before the 2019 accident involving Doran and Wyler, and the collision rate in the area was within expected limits. No County employee had any reason to be on the driveway or to know the sight distance from the driveway. This evidence showed that the defect was not sufficiently obvious to impute notice to the County and to shift the burden to H.D.

H.D. contends the trial court erred by focusing solely on evidence showing the driveway was infrequently used. She argues that *Martinez* requires the court to instead focus on the frequency of the use of Soledad Canyon Road. We disagree that *Martinez* would create such a requirement in this case.

In *Martinez*, the plaintiff tripped on a divot in an alley and sued the city for negligence under section 835. (*Martinez*, *supra*, 71 Cal.App.5th at p. 515.) The Court of Appeal affirmed summary judgment for the city because no triable issues existed as to constructive notice. (*Id*. at p. 523.) The court held that the divot was not sufficiently obvious to impart constructive notice because of its location in an alley. (*Id*. at p. 524.) The law "explicitly contemplates" differentiating between the obviousness of defects in streets and alleys by incorporating into the statute considerations of the " 'uses *for which the public entity used or intended others to use the public property*' and the 'uses *that the public entity actually knew others were making of the property*' . . . ." (*Id*. at p. 523, quoting § 835.2, subd. (b)(1); *Nicholson*,

22

*supra*, 5 Cal.2d at p. 367.) On this basis, the court found that because the city did not intend there to be pedestrian use of the alley, and alleys are not frequently used for walking, the divot in the alley did not meet the threshold of obviousness necessary for constructive notice as a matter of law. (*Martinez*, at pp. 523–524.)

The hazard in *Martinez* stemmed from an isolated area in an alley where the asphalt was not flush with a drainage channel, not from a condition arising from the use of two adjacent areas. (*Martinez*, *supra*, 71 Cal.App.5th at pp. 514–515.) The *Martinez* court thus had no opportunity to address the extent of the "area" courts should consider when determining the frequency of a property's use. (*Id*. at p. 524.) If anything, *Martinez*'s instruction to consider " ' "all [of] the existing circumstances" ' " when evaluating " 'the location, extent, and character of the use' " of the property, suggests that where the dangerous condition is alleged to arise out of the connection between two adjacent areas, there must be some indication that *both* areas are frequently used to impart constructive notice to the public entity. (*Id*. at p. 521.) Even assuming Soledad Canyon Road was used sufficiently frequently for purposes of obviousness, the County still met its initial burden with its evidence establishing the driveway was used extremely infrequently.

H.D. also cites *Campbell v. City of Palm Springs* (1963) 218 Cal.App.2d 12 (*Campbell*) to support her contention that the frequency of use must consider travel on Soledad Canyon Road. But *Campbell* offers no such support.

In *Campbell*, the court of appeal affirmed the trial court's finding that the city "had knowledge and notice" of a blind

23

intersection because the city "knew or should have known" about the hazard it created "to travelers on either [the highway] or the road intersecting therewith . . . ."[8] (*Campbell*, *supra*, 218 Cal.App.2d at pp. 16, 21.) The *Campbell* court did not consider how frequently the highway and access roads were traveled in determining that the blind intersection was hazardous to motorists. Indeed, the court in *Campbell* did not frame its analysis or holding in terms of constructive notice at all. The court's conclusion that the city knew or should have known about the danger was premised on the undisputed fact that the city "created, constructed, maintained and operated" the access road creating the blind intersection and the adjacent property containing the obstruction. (*Id.* at p. 21.) Thus, even if where the driveway and Soledad Canyon Road meet is characterized as an "intersection"—a point we do not decide—*Campbell* provides no guidance on the issue of frequency of use or obviousness for purposes of constructive notice. And, unlike the evidence about the city in *Campbell*, the evidence here shows the County did *not* create, construct, maintain, or operate the driveway.

### 2. H.D. did not raise a triable issue as to constructive notice

The County's prima facie showing shifted the burden to H.D. to set forth admissible evidence showing that the

---

[8] The case was decided under the former public entity liability statute, section 53051. (See *Teall v. City of Cudahy* (1963) 60 Cal.2d 431, 432, fn. 1.) Liability under section 53051 attached to a public entity that had actual or constructive notice of a defective condition. (*Nicholson*, *supra*, 5 Cal.2d at pp. 364–367.) The Legislature repealed section 53051 in 1963 and enacted a new scheme governing public entity liability, including section 835. (Stats. 1963, ch. 1681, §§ 1, 18, pp. 3275, 3286.)

24

inadequate sight distance for cars using the driveway was sufficiently obvious that the County should have been aware of it. H.D. did not meet that burden.

### a. Frequency of use[9]

H.D. argues her evidence shows the driveway was frequently used by film crews, City employees, and "additional persons" needing access to the City's property. However, there was no evidence of filming on the property since 2012. There was evidence of only a single City employee, Jeff Morrison, using the driveway at most two times each year. With respect to other persons attempting to access the property, H.D. cites Morrison's testimony explaining that the sign on the locked gate included a phone number that people *could* call if they needed to access the property for "legitimate reason[s]." However, there was no evidence about the frequency of calls to the City to gain access to the property, or, indeed, that any calls had ever been made. The evidence did not show or create an inference that the driveway was used to access the property beyond the gate with any frequency.

H.D. also argues the driveway's size and location was an "open invitation" to drivers to use it as a "turnaround." However, the record does not reflect the driveway was frequently used in this manner. At most, H.D.'s evidence shows that Morrison used the driveway as a turnaround around twice a year in the 12 years before the accident and Wyler used it once in this manner on the

---

[9] H.D. again cites *Campbell*, *supra*, 218 Cal.App.2d 12, to argue that evidence of travel on Soledad Canyon Road raises a triable issue regarding frequency of use. For reasons previously discussed, we find *Campbell* inapposite.

day of the accident.[10]  Because it is undisputed the driveway was not on County land and the County did not construct, maintain, use, or inspect it, a trier of fact could not reasonably conclude that the use of the property in 2012, Morrison's sporadic use, and Wyler's one-time use of the driveway shows the area was used frequently enough to impart constructive notice of the sight distance issue to the County.  (*Martinez*, *supra*, 71 Cal.App.5th at p. 523; *Nicholson, supra*, 5 Cal.2d at p. 367.)

### b.     Observations and visibility

H.D. relies on observations from others not employed by the County and a photograph of the driveway to argue that the dangerous condition was obvious.  We again disagree that this evidence raised triable issues of material fact.

Much of the evidence H.D. cites shows only that the driveway is visible from Soledad Canyon Road.  The evidence does not establish that the defect in question—a driver's insufficient field of vision *from the driveway*—was visible. (*Martinez, supra*, 71 Cal.App.5th at p. 520; *Barrett v. City of Claremont* (1953) 41 Cal.2d 70, 73 ["If [a] defect . . . presents no element of conspicuousness or notoriety, its continued existence does not impart constructive notice to the municipality"].)

Further, H.D. did not present any evidence creating a reasonable inference that the driveway's visibility itself gave the County constructive notice of the dangerous condition.  She claims that because the County "presumably" traveled both ways on Soledad Canyon Road during its inspections, the dangerous condition posed by the driveway would have been "manifestly

---

[10]     As noted above, while Wyler testified he was not using the driveway to make a U-turn, the CHP officer who investigated the accident site believed Wyler was trying to turn left.

26

easy" for the County to detect.  But she offers no evidence to support her contention, let alone evidence to contradict Luna's testimony that he did not use the driveway or see anyone else use it.  H.D. cannot raise an issue of fact by speculation, conjecture, or guesswork.  (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196–197.)

H.D. cites a photograph of the driveway, taken at the accident scene by a CHP officer, as evidence that the driveway's inadequate sight distance "is fully observable from Soledad Canyon Road . . . ."  Even if a reasonable trier of fact could conclude from the photograph that the driveway's insufficient sight distance was apparent from the roadway, under *Martinez*, this is not enough to establish obviousness.  H.D. was required to proffer evidence indicating that the intended use and frequency of use of the driveway created a triable issue about the defect's obviousness to the County.  (*Martinez*, *supra*, 71 Cal.App.5th at p. 521.)  She has not done so.

Finally, H.D. relies on *Carson*, *supra*, 36 Cal.3d 830, to argue Wyler and Morrison's "layperson" testimony that they noticed the obstructed sight distance when using the driveway raises a triable issue of obviousness.  *Carson* is not on point.  The *Carson* court reversed a judgment of nonsuit in part because the trial court required expert testimony to prove an obstruction existed at the intersection where the accident occurred.  (*Id*. at pp. 844–845.)  Our high court held that layperson testimony alone could establish the existence of a dangerous condition.  (*Id*. at p. 845.)  But, as noted above, in finding the trial court should have accepted as true evidence that the city had constructive notice of the obstruction, the *Carson* court relied on a city police officer's testimony about the heavy volume of traffic in the area,

27

which created an inference that city police officers regularly patrolled the intersection in question.  The city could thus be charged with knowledge of the obstruction that nonexperts had observed.  (*Id*. at p. 844.)

Here, the "layperson" testimony established that when one was on the driveway the insufficient sight distance was apparent.  But H.D. did not proffer evidence from which a trier of fact could reasonably conclude County employees ever used the driveway, such that constructive notice could be imparted to the County as it was imparted to the city in *Carson*.

### c.     Intended use

Finally, H.D. argues she raised a triable issue regarding constructive notice with evidence of the driveway's intended use.  She claims the trial court erroneously "fixat[ed]" on the locked gate to determine intended use and ignored the fact that the driveway is paved, and therefore "intended for, and used by, vehicles."

That the driveway was paved does not raise a triable issue about constructive notice based on an intended use of the driveway.  As *Martinez* observed, the Legislature incorporated different standards for assessing obviousness into section 835.2 "by also looking to 'whether the property was safe for the . . . uses *for which the public entity used or intended others to use the public property*' and the '*uses that the public entity actually knew others were making of the property*' . . . ."  (*Martinez, supra*, 71 Cal.App.5th at p. 523, quoting § 835.2, subd. (b)(1).)

Here, it is undisputed that the County did not construct, pave, or own the driveway or the land to which it provides access.  The County did not use or intend others to use the driveway.  The evidence created an inference that, at some point, the driveway

was intended to be used to enter or exit the adjoining land. However, the evidence was also undisputed that the land has had no active use since 2012, and a locked gate bars the road beyond the driveway. Even liberally construed, H.D.'s evidence showed only minimal *known* use of the driveway to access the land, consisting of one or two times a year. While the paved nature of the driveway indicates it is physically possible to use the space as a turnaround or driveway leading to the property, there is no evidence that the County knew or should have known it was being used in that way, such that it could be charged with knowledge of the insufficient sight distance from the driveway.

Considering all of the existing circumstances (*Martinez, supra*, 71 Cal.App.5th at p. 521), H.D. failed to raise any triable issues of material fact as to constructive notice of the insufficient sight distance from the driveway. We affirm the trial court order granting summary judgment.[11]

---

[11] H.D. also argues that a jury should decide the second factor under *Martinez*'s obviousness analysis—the reasonableness of the County's maintenance and inspection system. (*Martinez, supra*, 71 Cal.App.5th at p. 521.) Since we have concluded that H.D. did not raise a triable issue as to the obviousness of the defect based on the " 'location, extent, and character of the use' " of the property, we need not address the County's method of inspection. (*Ibid.*; see *Strongman v. County of Kern* (1967) 255 Cal.App.2d 308, 313 ["the method of inspection is secondary" in constructive notice analysis].)

## DISPOSITION

The judgment is affirmed.  The County is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

LAVIN, J.